NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued October 31, 2017
Decided February 12, 2018

## Before

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1445

HAILE ABEBE,
　　　*Plaintiff-Appellant,*

*v.*

THERMO FISHER SCIENTIFIC, INC.,
　　　*Defendant-Appellee.*

Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.

No. 1:15-cv-00206-JMS-DKL
Jane E. Magnus-Stinson, *Chief Judge.*

## Order

Haile Abebe worked for Eli Lilly & Co. for 15 years as a scientist. When Lilly contracted with Thermo Fisher Scientific to handle the logistics for drugs' clinical trials, he became an employee of Thermo Fisher. After he had been there for about five years, doing the same tasks as at Lilly, his original employer took the logistics work back. Thermo Fisher sent layoff notices to all employees in the logistics group, offering severance pay plus a retention bonus for staying as long as Thermo Fisher continued doing the work. Thermo Fisher asked, in exchange, for a release of any legal claims. Abebe rejected the offer and contends in this suit that he suffered discrimination and retaliation while in Thermo Fisher's employ.

Abebe, who is black, is of Ethiopian ancestry. He contends that Thermo Fisher held these attributes against him when he applied for other positions within that firm. He also maintains that Thermo Fisher retaliated when he complained and sued about the denial of his intra-firm job applications. The district court concluded that some of Abebe's claims are time-barred and that the rest fail on the merits. 2017 U.S. Dist. Lexis 12925 (S.D. Ind. Jan. 31, 2017). The court granted summary judgment to Thermo Fisher.

The district court wrote a thorough opinion, and we affirm largely for the reasons the judge gave. We briefly discuss two of Abebe's appellate arguments. The rest are well handled in the district court's opinion and need not be discussed further.

Abebe's lead argument is that the district court erred by refusing to consider any evidence that had been omitted from the complaint. That would indeed be a mistake—but it is not one the district judge committed. Complaints plead claims, not facts. But claims are all the district court sought in the complaint. Under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), each failure to promote, and each retaliatory act, is a separate claim with its own period of limitations. The district judge used the complaint to determine what claims Abebe was, and was not, advancing. Then she considered all evidence in the record bearing on each of the claims in the complaint. That's entirely proper.

Abebe's argument that Thermo Fisher retaliated against him because he complained about discrimination is undeveloped. His appellate brief contains multiple paragraphs along the lines of:

> The retaliation included Thermo Fisher not selecting Abebe for the promotion in January 2012 but telling him that they [*sic*] would have more opportunities in the future.

Listing everything that Abebe deems adverse to his interests does not *begin* to show retaliation. A plaintiff must produce evidence supporting an inference that his complaints caused the adverse actions. The district judge stated that Abebe had not produced any basis for a finding of causation; we agree with that conclusion.

Far from trying to make life miserable for Abebe, Thermo Fisher paid him a substantial retention bonus in 2014 to persuade him to keep working until Lilly reabsorbed the group in which Abebe worked. Abebe uses the 2014 bonus as the basis of an argument that in March 2015, when the work was about to return to Lilly, Thermo Fisher violated federal law by requiring him to sign a release as a condition of receiving severance pay

plus another retention bonus. Abebe had filed a discrimination suit in February 2015, so the demand for a release must have been retaliatory, he asserts.

Abebe offers no evidence of causation other than the temporal sequence, but *post hoc ergo propter hoc* is not a reliable means of showing causation. Asking for a release in exchange for benefits at the end of employment is a standard business practice; Abebe has not tried to show that Thermo Fisher adopted this practice only after he filed suit.

Thermo Fisher made the same cash-for-release offer to every member of the logistics group. Instead of contending that he was treated differently from other employees who had not complained about discrimination, Abebe maintains that the retaliation lay in treating him the same as his fellow workers. He was the only one who had filed a suit, Abebe observes, and he insists that Thermo Fisher had to exempt him from a requirement applied to everyone else. But he does not cite any decision holding that the statutory anti-retaliation rule condemns an employer's decision to treat all workers alike. Signing a release may have been more costly for Abebe than other workers, but to show a violation of the law he needed to establish disparate treatment, not just disparate impact. The disparate-impact doctrine of 42 U.S.C. §2000e–2(k) and *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975), deals with employment practices such as tests, and then only if the requirement is not "job related" (§2000e–2(k)(1)(A)(i)); it is not a means by which particular employees can claim immunity from generally applicable requirements whose business justification is easy to see.

AFFIRMED